RENDERED: JUNE 28, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0747-DG

CHRISTINE CASTILLO                                          APPELLANT


v.           ON DISCRETIONARY REVIEW FROM FRANKLIN CIRCUIT
COURT
HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 23-XX-00003


THE BAXTER APARTMENTS, LLC-
SARAH APARTMENTS                                      APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND ECKERLE, JUDGES.

CETRULO, JUDGE: Appellant Christine Castillo ("Castillo") seeks discretionary review of a Franklin Circuit Court order denying her motion to set aside a previous circuit court order that affirmed a judgment of the Franklin District Court finding her guilty of forcible detainer. After review, we reverse and remand.

**BACKGROUND**

In July 2019, Castillo, a recent immigrant and non-English speaker, entered into a lease with Appellee The Baxter Apartments, LLC – Sarah Apartments ("Sarah Apartments"). According to the lease, the rental unit was subject to a seven-day notice of failure to pay rent and intention to terminate the lease; Sarah Apartments could increase rent (not to exceed 10%); rent payments were due by the first of each month; Sarah Apartments could impose a late fee of $30 if Castillo did not pay in full by the fifth of each month; and the lease required money orders or a cashier's check for late rent payments.

Initially, the lease set the rent amount at $575 per month. However, Sarah Apartments incrementally increased Castillo's rent amount, and as of January 1, 2023, Castillo's rent was $752[1] per month. There were no allegations of unpaid rent until January 2023.[2] On January 6, 2023, Castillo[3] tendered a $500

---

[1] Despite the lease limiting rent increases to 10% or less, $752 represents a 15.34% increase from December 2022 ($100 addition). These numbers are based on Castillo's appellant brief and Sarah Apartments does not challenge the numbers. However, Castillo presented this argument for the first time on appeal. This is a court of review, and we may only review those findings made below and may not address arguments made for the first time on appeal. *Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 852 (Ky. 2016) (internal quotation marks, footnotes, and citations omitted) ("An appellate court is without authority to review issues not raised in or decided by the trial court. The proper role for an appellate court is to review for error – and there can be no error when the issue has not been presented to the trial court for decision.").

[2] Castillo admitted in her appellant brief that she had $0.83 outstanding as of January 1, 2023.

[3] It is unclear if Castillo or her husband tendered this money order.

-2-

money order to Sarah Apartments. Sarah Apartments took the $500 money order, did not return the payment, and did not inform Castillo that it was rejecting or not "accepting" the money order as late rent. On January 10, Sarah Apartments placed a notice on Castillo's door demanding she pay the full amount owed ($782.83) or vacate within seven days. On January 20, Castillo's husband delivered another money order for $250 to Sarah Apartments.[4] Again, Sarah Apartments took the $250 money order, did not return the payment, and did not inform Castillo that it was rejecting or not "accepting" the money order.

On January 25, Sarah Apartments filed a forcible detainer action against Castillo for non-payment of rent. On the forcible detainer complaint form, Sarah Apartments stated that Castillo's *current* rent was $575, and that she was in default in the amount of $782.83.[5] On February 5, Castillo filed a motion to dismiss. She argued a forcible detainer judgment would be improper because

---

[4] Here, the parties disagree: Castillo argues the money order was delivered on January 20, but Sarah Apartments argues it was January 26. The property manager for Sarah Apartments implied, through later testimony, that although she found it on her desk on January 26, her "boss" might have accepted it the week prior while she was out for a medical procedure. Castillo argues the money order was dated *and* tendered by her husband on January 20. The district court did not make an explicit factual finding as to date of delivery. We make note of this discrepancy, but the six-day difference is not outcome determinative under these circumstances.

[5] It is unclear why Sarah Apartments reported Castillo's *current* rent as $575, and not the $752 they had raised it to at the beginning of 2023. Additionally, Sarah Apartments presumably listed the default amount as $782.82 because they were not "accepting" the tendered money orders. However, there is merit to Castillo's argument that the amount in default *at that time* was only **$32.83** ($0.83 toward 2022 rent + $2 toward January 2023 rent + $30 late fee).

Sarah Apartments (1) only gave her a seven-day notice, not the 30 days required by § 4024(c)(1) of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, 15 United States Code § 9021; and, (2) waived the right to terminate the lease when it accepted Castillo's money orders with knowledge of a default, citing Kentucky Revised Statute ("KRS") 383.675. Castillo pointed out that she "paid and [Sarah Apartments] accepted $750.00 toward the $782.83 of the rent due." Therefore, she argued, she was not forcibly detaining the property at the time Sarah Apartments commenced the action.

The record does not contain a response by Sarah Apartments to Castillo's motion to dismiss, but on February 6, the district court held an eviction hearing. At that hearing, a Sarah Apartments property manager testified that a man tendered the money orders on Castillo's behalf, but that the property manager did not "cash" them. Castillo's legal counsel asked the property manager about those payments, and the following conversation ensued:

> **Property Manager**: They [money orders] were placed on my desk, but I did not deposit them or cash them.
>
> **Castillo's Legal Counsel**: When you say they were placed on your desk, somebody in your office accepted them?
>
> **Property Manager**: Yes, that would be my boss.
>
> **Legal Counsel for Sarah Apartments**: No.

-4-

[Inaudible conversation between Sarah Apartments' legal counsel and Property Manager.]

**Castillo**: Did you return . . .

(interrupting) **Property Manager**: We did not *accept* it. Like, it was not placed into the ledger, but if you hand it to us, we can set it on our desk.

Ultimately, the district court denied Castillo's motion to dismiss, entered a forcible detainer judgment against her, and ordered her to relinquish possession of the property no later than February 13. The record indicates that she did vacate the premises on that date.

On February 13, Castillo also tendered a notice of appeal and a motion to proceed *in forma pauperis* and stay the execution of the forcible detainer judgment. The circuit court denied the *in forma pauperis* motion that same day, giving her 30 days to pay the filing fee. The fee was timely paid, and the appeal proceeded to circuit court. On April 11, Sarah Apartments filed a motion to dismiss Castillo's appeal, and one week later the circuit court granted Sarah Apartments' motion ("April 2023 Order").

On April 28, Castillo filed a motion to set aside the April 2023 Order pursuant to Kentucky Rule of Civil Procedure ("CR") 60.02. After a hearing, the court denied Castillo's CR 60.02 motion finding the matter was moot, notice of eviction was properly given, and the January 2023 payments were "not accepted"

by Sarah Apartments ("May 2023 Order"). Thereafter, Castillo moved for discretionary review, which we granted.

## ANALYSIS

Here, Castillo argues the circuit court erred in denying her motion to set aside the April 2023 Order because her appeal was not moot, and Sarah Apartments waived Castillo's default by accepting her money orders.[6] We agree.

We review findings of fact for clear error. CR 52.01. Factual findings are clearly erroneous if not supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). "If the trial judge's findings of fact in the underlying action are not clearly erroneous, *i.e.*, are supported by substantial evidence, then the appellate court's role is confined to determining whether those facts support the trial judge's legal conclusion." *Whitcher v. Hous. Auth. of Henderson*, 672 S.W.3d 58, 60 (Ky. App. 2023) (quoting *Commonwealth v. Deloney*, 20 S.W.3d 471, 473-74 (Ky. 2000)).

---

[6] Castillo also argued that federal law required Sarah Apartments to give a 30-day notice, not a seven-day notice. However, this argument required fact-finding – whether Sarah Apartments was a "covered dwelling" under § 4024(c)(1) of the CARES Act. The district court did not make such a finding, and Castillo did not request additional findings pursuant to CR 52.04. As such, Castillo did not properly preserve this argument. *See Vinson v. Sorrell*, 136 S.W.3d 465, 470-71 (Ky. 2004) (finding an issue non-reviewable on appeal because the trier of fact did not make an essential finding and the party later relying on that absent fact did not request additional findings below). Additionally, we are not permitted to take judicial notice of such a finding. *Mash v. Commonwealth*, 376 S.W.3d 548, 552 (Ky. 2012) (internal quotation marks and citation omitted) ("Judicial notice should not be used as a device to correct on appeal a failure to present adequate evidence to the trial court.").

However, we review statutory interpretation and other matters of law *de novo*. *Shinkle v. Turner*, 496 S.W.3d 418, 420 (Ky. 2016) (citing *Pennyrile Allied Cmty. Serv., Inc. v. Rogers*, 459 S.W.3d 339, 342 (Ky. 2015)). Forcible detainer is a special statutory proceeding which deals exclusively with the present right of possession of real property and is governed by KRS 383.200-285. *Shinkle*, 496 S.W.3d at 421-22. Sarah Apartments argue that because a forcible detainer action is about the *current* right of possession, the fact that Castillo vacated the premises renders the matter moot. However, under these circumstances, we do not agree.

Castillo argues that a forcible detainer judgment – *i.e.*, "the stain of an eviction" – often results in severe, long-lasting collateral consequences for a tenant such as the destabilization of families; the inability to rent in the area; negative impact on a tenant's credit rating (which in turn has financial consequences); and detriment to current and future employment and upward mobility. Thus, she argues, there is still an ongoing legal controversy beyond current right of possession, thereby escaping a determination of mootness. We agree that these "collateral consequences" of a forcible detainer judgment have merit. *See Young v. House*, 648 S.W.3d 706, 709 (Ky. App. 2022). But here, we hold that the public policy interest exception to mootness applies.

> To meet the public interest exception, a litigant must clearly show that: "(1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers;

-7-

and (3) there is a likelihood of future recurrence of the question." [*Morgan v. Getter*, 441 S.W.3d 94, 102 (Ky. 2014)] (citation omitted).

*Young*, 648 S.W.3d at 709.

"The Supreme Court of Kentucky has previously concluded that 'the proper and efficient application of the law pertaining to the special statutory proceeding for forcible entry and detainer is a matter of public interest[,]' satisfying the first criteria." *Id.* (quoting *Shinkle*, 496 S.W.3d at 420). Additionally, as there is no appellate guidance concerning money order acceptance within the context of KRS 383.675, and given the import of acceptance as it applies to waiver of a landlord's right to terminate a lease, we conclude that the remaining criteria have been established. Accordingly, we shall review the merits of Castillo's arguments.

"In Kentucky, a tenant is guilty of a forcible detainer when he refuses to vacate the premises after his right of possession has ended." *Young*, 648 S.W.3d at 421; KRS 383.200(3)(a). "A forcible detainer action focuses upon and determines which party is entitled to *present* possession of the property at the commencement of the action, not at some later date." *Shinkle*, 496 S.W.3d at 422 (citing *Bledsoe v. Leonhart*, 205 S.W.2d 483, 484 (Ky. 1947)). Implicit in that statement is an understanding that a landlord cannot pursue a forcible detainer complaint – *i.e.*, commence the action in district court asserting the claim – until

the tenant has lost her right of current possession. *See id.* Further, if a landlord accepts rent with knowledge of a default by the tenant, the landlord waives his right to terminate a rental agreement for that breach and, thus, forfeits his right to pursue a forcible detainer judgment against the tenant for that default. *See* KRS 383.675; *see also Shinkle*, 496 S.W.3d at 421.

Here, Castillo argues that when Sarah Apartments accepted the money orders – with knowledge of her default and without indicating to her that the payments were being rejected or returned – Sarah Apartments waived its right to terminate the lease for that breach, citing KRS 383.675. We agree. To the contrary, Sarah Apartments argues they did not "accept" rent because they did not "add it to their ledger," but such an argument, under these circumstances, is rather disingenuous.

On January 6, 2023, Castillo tendered a $500 money order to Sarah Apartments. Sarah Apartments received the money order, did not inform Castillo it was not being accepted, and did not return the money order. On January 20, 2023, Castillo's husband delivered a $250 money order to the "boss" at Sarah Apartments; that boss took possession of the money order; placed it on the property manager's desk; neither the boss or property manager informed Castillo or Castillo's husband they were not "accepting" the payment as late rent; and Sarah

Apartments did not return the money orders. We take judicial notice[7] that unlike a personal check (where funds are not removed until it is "cashed"), money orders are *purchased*, *i.e.*, **prepaid**, and the funds are attached to the money order itself.[8] It is unclear how, under these circumstances, the district court determined Sarah Apartments did not "accept" the money. Thus, the factual finding that Sarah Apartments did not "accept" the money order rent payments was clearly erroneous because it was not supported by substantial evidence. *See* CR 52.01; *see also Whitcher*, 672 S.W.3d at 60 (citations omitted).

Sarah Apartments *did* accept the money orders, thereby waiving default of the late rent payment. *See* KRS 383.675. Because Sarah Apartments waived its right to terminate the lease, they did not yet have the right of possession of the premises and no statutory right at that time to commence the forcible detainer action. *See Shinkle*, 496 S.W.3d at 423. (Finding the landlord cannot claim a right of immediate possession until the statutory elements of a forcible

---

[7] Kentucky Rule of Evidence 201(b)(2) allows judicial notice of adjudicative facts that are "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

[8] *See* Casey Bond, *How do Money Orders Work?*, U.S. NEWS & WORLD REPORT (May 17, 2023), https://www.usnews.com/banking/articles/how-do-money-orders-work ("A money order is a prepaid, guaranteed form of payment that is backed by a financial institution. . . . When you purchase a money order, you pay the face value, plus any associated fees."); *see also* Emily Guy Birken, *What is A Money Order and How Does it Work?*, FORBES (May 5, 2023), https://www.forbes.com/advisor/banking/what-is-a-money-order ("Much like a check, a money order is a paper payment. Unlike a check, money orders can't bounce. You purchase a money order with cash or another guaranteed form of payment[.]")

-10-

detainer are met; doing so prematurely is fatal to the complaint.) Sarah Apartments had no cause of action when it initiated the forcible detainer complaint. Thus, the district court erred in not granting Castillo's February 5, 2023, motion to dismiss. It appears the circuit court did not fully consider the waiver issue, having concluded that the matter was moot due to Castillo's vacating of the premises.

## CONCLUSION

As stated in KRS 383.675, a landlord waives his right to terminate a lease if he accepts rent with knowledge of a default by the tenant. Sarah Apartments accepted Castillo's money orders – by taking possession of the money orders, not informing Castillo the money orders were not being accepted, and not returning the money orders to Castillo – and thereby waived its right to terminate Castillo's lease for that default. Thus, Sarah Apartments had no current right of possession at the time it initiated the forcible detainer action. Accordingly, we REVERSE the April 2023 Order and the May 2023 Order of the Franklin Circuit Court and REMAND to the Franklin District Court for entry of an order vacating the forcible detainer judgment and dismissing the underlying action.

CALDWELL, JUDGE, CONCURS.

ECKERLE, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

ECKERLE, JUDGE, DISSENTING: Respectfully, I must dissent from the majority's decision to reverse and remand because I agree with the Circuit

-11-

Court's assessment that this matter is now moot. "Ordinarily, this Court dismisses an action when no relief can be given to the parties below." *Commonwealth v. Stevens*, 489 S.W.3d 755, 760 (Ky. App. 2016). "A forcible detainer action focuses upon and determines which party is entitled to *present* possession of the property at the commencement of the action, not at some later date." *Shinkle v. Turner*, 496 S.W.3d 418, 422 (Ky. 2016) (emphasis in original) (citing *Bledsoe v. Leonhart*, 305 Ky. 707, 205 S.W.2d 483, 484 (1947)). A forcible detainer court only has the authority to order restitution of the premises and payment of costs expended by the prevailing party. KRS 383.240. In this case, Castillo admits that she no longer has possession of the leased premises, and she is not seeking recovery of any costs. Thus, this Court cannot grant any meaningful relief to Castillo.

Nevertheless, the majority concludes we may review the matter under the public interest exception set out by the Kentucky Supreme Court in *Morgan v. Getter*, 441 S.W.3d 94, 103 (Ky. 2014). In *Young v. House*, 648 S.W.3d 706 (Ky. App. 2022), a panel of this Court implied that the collateral consequences of a forcible detainer judgment may warrant review. *Id.* at 709. The majority suggests that these collateral consequences may give rise to an existing controversy despite the tenant's lack of possession. However, the panel in *Young* did not make such a

-12-

broad ruling. Rather, the panel in *Young* and the majority in this case focus on the application of the public interest exception to the mootness rule.

I am not convinced that all three elements of the public interest exception are met in this case. The question in *Young* concerned whether the landlord complied with the notice prerequisite to filing the forcible detainer complaint. *Id. See also Phillips v. M & M Corbin Properties, LLC*, 593 S.W.3d 525, 528 (Ky. App. 2020), and *Shinkle*, *supra* at 422-23 (landlord failed to comply with statutory notice prior to filing forcible detainer complaint). Similarly, in *Meinshausen v. Friendship House of Louisville, Inc.*, 607 S.W.3d 199 (Ky. App. 2020), the question concerned whether the District Court acquired jurisdiction when the complaint was not filed by a party with an immediate right to possession of the property. *Id.* at 204. In each of these cases, the issue was whether there was strict compliance necessary to invoke the jurisdiction of the District Court in a special statutory proceeding.

But in this case, the question is whether the landlord waived its right to terminate a rental agreement for the tenant's breach. This is a factual matter relating to a statutory defense to forcible detainer. *See* KRS 383.675. Unlike in the cases cited above, this issue presents a distinctly factual question that is not of a public nature requiring authoritative guidance and on which there is little likelihood of further recurrence on these particular facts. *Morgan*, 441 S.W.3d at

102. Therefore, I would affirm the order of the Franklin Circuit Court dismissing this matter as moot.

BRIEF FOR APPELLANT:

Juliana N. Madaki
Louisville, Kentucky

BRIEF FOR APPELLEE:

Jaron P. Blandford
Chris Eller
Lexington, Kentucky